## THE THOMAS B. GARLAND.

### THE EMMA J. KENNEDY.

(District Court, S. D. New York. June 21, 1901.)

ADMIRALTY—COLLISION—FERRYBOATS—TUG AND TOW.

> Inland navigation rules, article 19 (2 Supp. Rev. St. p. 639), gives a tug and tow going up East river right of way over ferryboats. Article 22 requires ferryboats to avoid crossing ahead of a tug and tow, if the circumstances admit, and article 23 declares that a ferryboat, on signaling to cross a tug and tow, and getting no answer, shall stop and reverse. *Held* that, where a ferryboat on coming from her slip was 1,000 feet from a tug and tow coming up the river about midstream, and though there was no reason why the ferry could not have passed astern of the tow, she claimed to have signaled to pass in front. and, on getting no response from the tug, kept her course until she was within 50 feet of the tow, when she endeavored to stop, but was struck by the tow, the ferryboat was at fault, and was not entitled to maintain a libel against the tug and tow.

In Admiralty.

Wheeler & Cortis and Mr. Haight, for libelant.
Convers & Kirlin, for the Thomas B. Garland.
Foley & Wray, for the Emma J Kennedy.

BROWN, District Judge. A little before 6 o'clock in the morning of November 20, 1900, shortly after the ferryboat Sag Harbor had left her slip at 34th street, East river, on her trip to Long Island city, when about 800 or 900 feet outside of the slip, she came in collision with the schooner Garland going up river in the flood tide in tow of the tug Kennedy upon a hawser of about 150 feet and received damages, for the recovery of which the above libel was filed.

When the ferryboat started from her slip, the Kennedy with her tow was not far from midstream, about 1,000 feet below, but was pointing somewhat toward the New York shore in order to pass to the southward of Man of War rock, off 38th street, so as to go up the westerly channel in passing Blackwell's Island. She had her regulation light properly set and burning, with two white vertical lights indicating her tow, which the libelants say were seen. Upon leaving the slip the ferryboat had the tug and tow upon her starboard

hand. It was her duty by article 19 of the inland rules of navigation (2 Supp. Rev. St. p. 639) to keep out of their way. Article 22 required her to avoid crossing ahead of the tug and tow "if the circumstances of the case admit." According to the pilot's own testimony, there was nothing to prevent his going astern of the tug and tow as that rule required. The testimony of the pilot of the tug, corroborated by several witnesses, is that as the ferryboat was seen coming out of her slip, he gave her a signal of one whistle and got one whistle in reply importing that the ferryboat would go astern. He supposed that there would be no further trouble; that that was in accordance with the rules of navigation, and had the rules been observed, there was not the least reason for any collision. It is possible that the single whistle, taken as a reply, may have been the whistle given by the ferryboat on starting out of the slip a little delayed. Shortly after getting out of the slip, however, the pilot of the ferryboat testifies, and other witnesses confirm him, that he gave a signal of two whistles to the tug indicating his desire to go ahead of her; that this signal of two whistles was repeated twice afterwards, making three times in all, and that no answer was received to either; that the ferryboat continued on at full speed until she had reached a point within about 100 feet of the line of the tug and tow, the tug and tow being then nearly ahead of him when he got an answer of one whistle from the tug, whereupon he gave an alarm and reversed, and that the tug passed about 50 feet ahead of him. He claims that within this space of 50 feet he completely stopped the ferryboat from full speed ahead and got stern way on her; and that the collision with the schooner was caused solely by her starboarding, by which the schooner's bow was brought against the starboard side of the ferryboat. This is contradicted by the witnesses for the schooner, and in my judgment is wholly disproved, and the claim of the ferryboat that by reversing from full speed ahead she could get stern way on in advancing 50 feet is ludicrous and absurd.

The collision was plainly caused by the persistent and reckless navigation of the ferryboat, in direct and deliberate violation of the 19th, 20th, 22d and 23d articles of the rules of navigation, as well as rule 3 of the supervising inspectors, which under the circumstances required her to stop and reverse after getting no answer to her first signal of two whistles.

As regards the contradiction of whistles, it is possible that the answer of one whistle, which the witnesses for the tug say was received from the ferryboat, in answer to her signal of one whistle, may have been a slip whistle given by the ferryboat as she was leaving the slip. I do not doubt that the tug gave the signal of one whistle and heard the answer of one whistle in apparent reply. The tug and tow were in full view of the ferryboat at the time. The tug afterwards gave another signal of one whistle in response to the signal of two whistles from the ferryboat, the only signal of two whistles that was heard. I am of opinion that this was all the reply that was required from the tug.

The libel should be dismissed, with costs.